IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI

IN RE:                              )
                                    )
ZIAD AL SAOUDI                      )        Case No. 10-44521
                Debtor.             )

Small Business Case under Chapter 11

## ZIAD AL SAOUDI'S FIRST AMENDED COMBINED PLAN AND DISCLOSURE STATEMENT, DATED MAY 10, 2011

## I.    INTRODUCTION

This is the combined Plan and Disclosure Statement (for ease of reference, the combined Plan and Disclosure Statement will be referred to as the "Plan") in the small business chapter 11 case of Ziad Al Saoudi (the "Debtor"). This Plan is filed under chapter 11 of the Bankruptcy Code (the "Code") and proposes to pay creditors of the Debtor from the Debtor's income from his business, the Smuggler's Inn, a bar and restauarant in Kansas City, Missouri. This Plan provides for three classes of secured claims and one class of unsecured claims. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles III and IV of this Plan for information regarding the precise treatment of their claims.
This Plan also provides detailed information regarding the terms for payment of the Debtor's creditors and other information designed to assist creditors and equity security holders in determining whether to accept the Plan. ***Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)***

## A.    Purpose of This Document

This Plan describes:
- The Debtor and significant events during the bankruptcy case.
- Historical information regarding the Debtor and the events leading to its bankruptcy filing.
- How the Plan proposes to treat claims or equity interests of the type you hold (i.e., what you will receive on your claim or equity interest if the Plan is confirmed).
- Who can vote on or object to the Plan.
- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan.
- Why the Debtor believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation.
- The effect of confirmation of the Plan.

**B.      Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

The Court has not yet confirmed the Plan.  This section describes the procedures under which the Plan will or will not be confirmed.

1.  Time and Place of the Hearing to Confirm the Plan/Approve Adequate of Disclosure Statement
The hearing at which the Court will consider confirmation of the Plan and determination of the adequacy of disclosure set forth in the Plan will take place on **June 14, 2011** at **10:00 AM** in Courtroom **6C**, at the **Charles Evans Whittaker Federal Courthouse Courtroom 6C, 400 E. 9th St., Kansas City, MO**

2.      Deadline For Voting to Accept or Reject the Plan
If you are entitled to vote to accept or reject the Plan, vote on the enclosed ballot and return the ballot to via mail, facsimile, or electronic mail to;

**Victor Weber**
**Merrick , Baker, & Strauss, P.C.**
**1044 Main, Ste 400**
**Kansas City, Missouri 64105**
**Phone: (816) 221-8855**
**Fax: (816) 221-7886**
**Email: victor@merrickbakerstrauss.com**
COUNSEL FOR DEBTOR


See section IX.B. below for a discussion of voting eligibility requirements.
Your ballot must be received by **June 10, 2011** or it will not be counted.

3.      Deadline For Objecting to the Adequacy of Disclosure and Confirmation of the Plan
Objections to the adequacy of the disclosures stated in this Plan and to confirmation of the Plan must be filed with the Court and served upon;

**Victor Weber**
**Merrick , Baker, & Strauss, P.C.**
**1044 Main, Ste 400**
**Kansas City, Missouri 64105**
**Phone: (816) 221-8855**
**Fax: (816) 221-7886**
**Email: victor@merrickbakerstrauss.com**
COUNSEL FOR DEBTOR

Objections to the Adequacy of Disclosure and Confirmation of Plan must be received by **June 10, 2011**

4.      Identity of Person to Contact for More Information
If you want additional information about the Plan, you should contact counsel for the Debtor,

Victor Weber
Merrick , Baker, & Strauss, P.C.
1044 Main, Ste 400
Kansas City, Missouri 64105
Phone: (816) 221-8855
Fax: (816) 221-7886
Email: victor@merrickbakerstrauss.com

## II.   BACKGROUND

### A.   Description and History of the Debtor's Business

The Debtor is a an individual.  Since 2001, the Debtor has owned a commercial building at 1650 N. Universal Drive, Kansas City, Missouri 64120.  Since 1998, he has operated a restaurant called the Smugglers Inn which conducts business on these premises.  The restaurant is owned and operated by Son and H, Inc. a Missouri Corporation of which the Debtor is the president and sole shareholder.  Since 1998, all the Debtor's income has been derived from the wages and other payments he has received from the Smugglers Inn.

### B.   Insiders of the Debtor

The only insider of the Debtor addressed in this Plan is Son and H, Inc. a Missouri corporation of which the Debtor is the president and sole shareholder.

### C.   Events Leading to the Debtor's Chapter 11 Filing

The financial distress which forced the Debtor into bankruptcy was largely precipitated by an unforeseen increase in the real estate taxes due on the Debtor's real estate at 1650 Corporate Drive in Kansas City, Missouri, where his corporation, the Smugglers Inn is operated by the Debtor's corporation, Son & H, Inc.  When the Debtor first occupied the property in 1998, the annual real estate taxes were assessed at approximately $10,000 per year.  However, in 2002, the county increased its estimate of the value of this property from approximately $400,000 to $800,000, and continued to increase its estimate of the value of property through 2008, when it was valued at $900,346, which resulted in an increase in the Debtor's tax obligation to $27,471.07.  The Debtor was unable to meet these tax obligations and fell further and further behind on his tax obligations, which grew almost exponentially as interest and penalties were added.  In 2009, the Debtor was finally able to successfully appeal the County's valuation and the real estate was assessed at a more reasonable figure of $480,000, which has reduced the Debtor's annual tax burden to approximately $15,000.

In order to resolve his financial difficulties, the Debtor filed a petition in the Bankruptcy Court for the Western District of Missouri seeking relief under Chapter 13 of the Bankruptcy Code on April 29, 2009, case number 09-41899.  The debtor attempted to confirm a chapter 13 plan, however, it became apparent that the Debtor owed an amount of unsecured debt in excess of that permissible under chapter 13.  Accordingly, on May 4, 2010, the case was dismissed.

### D.   Increased Profitability of the Debtor's Business

Substantially all the Debtor's income is derived from wages and rent payments he receives from the Smugglers Inn restaurant.  For most of the time the Debtor operated the

Smugglers Inn, its business was primarily focused on restaurant operations, the sale of food. However, in the fall of 2010, the Smugglers Inn began to market itself as a nightclub as well as a restaurant. The Smuggler's Inn has steadily added entertainment offerings to entice customers and now five nights a week consistently offers themed entertainment for which it charges its patrons a cover charge.

On Wednesday nights, the restaurant provides live music. On Thursday evenings, radio station Magic 107.3 broadcasts live from the restaurant. On Friday nights the restaurant hosts a live salsa band. On Saturdays, Smugglers Inn has Latino Music and dancing, and on Sundays, the restaurant hosts a live Mexican band.

These themed entertainment nights have proved very successful. They have created an entirely new stream of income derived from cover charges. Since November of 2010, when the Smugglers Inn began aggressively pursuing this new source of income, it has earned an average of $15,626.23 per month from cover charges.

This new income has substantially increased the profitability of the Smuggler's Inn as is evidenced by Smugglers Inn's Financial Statements which are attached as **Exhibit A** to this Plan.

**E.      Significant Events During the Bankruptcy Case**

The debtor's retention of Bruce E. Strauss and Victor Weber of the firm Merrick, Baker, & Strauss, P.C. as the debtor's bankruptcy counsel was approved by order of the Bankruptcy Court on September 20, 2010.

In addition, the debtor has obtained court approval to sell two of his vehicles, a 2002 Mercedes Benz, for $9,500 and a 1999 Chevrolet Venture van for $1,500. The van has already been sold and the Mercedes Benz will be sold prior to the Effective Date.

**F.      Projected Recovery of Avoidable Transfers**

The Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions.

**G.      Claims Objections**
Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. The procedures for resolving disputed claims are stated in Article IV of the Plan.

**H.      Current and Historical Financial Conditions**
The identity and fair market value of the estate's assets are listed below;

Real Estate:

| | | |
|---|---|---|
| (1) | Residence at 1310 Northwest 47th Street, Kansas City, Missouri | $425,000 |
| (2) | Smugglers Inn property at 1650 N. Universal, Kansas City, Missouri, | $360,000 |
| (3) | 2 Bedroom house in Amman, Jordan | $50,000 |

A list of the Debtor's personal property and its values is set forth in **Exhibit C**.

The 2009,  2010, and January through April 2011 profit and loss statements of the Debtor's business, Son & H, Inc. which runs the Smugglers Inn restaurant and bar, and which is the source of all of the Debtor's income are set forth in **Exhibit A**.

The Debtor's periodic operating reports filed with the United States Trustee since the commencement of the Debtor's bankruptcy case are set forth in **Exhibit B**.

**III.     THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS**

**A.     What is the Purpose of the Plan of Reorganization?**
As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

**B.     Explanation of Classes of Claims and Equity Interests**
1.     Classes of Secured Claims
Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under Code § 506. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.

2.     Classes of Priority Unsecured Claims
Certain priority claims that are referred to in Code §§ 507(a)(1), (4), (5), (6), and (7) are required to be placed in classes.  The Code requires that each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim.  However, a class of holders of such claims may vote to accept different treatment.

3.     Class of General Unsecured Claims
General unsecured claims are not secured by property of the estate and are not entitled to priority under Code § 507(a).

**C.     Overview - Treatment of Claims and Interests under Plan**
Claims and interests are treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 – Priority Claims | Impaired | The annual interest rate on these Claims will be 5%, running from the Effective date. All unsecured priority claims shall be paid in full on or before the fourth anniversary of the Effective Date. Beginning on the Effective Date, the Debtor shall make monthly payments of at least $206.58, beginning on the Effective Date to the Missouri Department of Revenue for various withholding, income, and sales taxes owed by the Debtor. Beginning on the Effective Date, the Debtor shall pay the Federal Internal Revenue Service monthly payments of at least $100.25 on account of the Debtor's 2009 income tax obligation. The Debtor will pay the pre-petition real estate taxes due the Jackson County Collector in monthly payments of at least $1,071.02 beginning on the Effective date, with the balance due on or before the fifth anniversary of the Effective Date. |
| Class 2 –Claim of Residential Credit Solutions | Impaired | The Debtor shall make a payment of $70,000 on the Effective date, and monthly payments of at least $190.54, beginning on the Effective Date to the Class 2 Creditor. The Debtor shall also make the contractually due monthly payment to the Class 2 Creditor, which consists of a payment for currently due principal, interest, and escrow of $3,171.79. This payment may change due to changes in escrow requirements and due to changes in the contractual rate of interest. Notice of any change in this monthly payment shall be served on debtors' counsel at least 30 days prior to the payment change. |
| Class 3 –Claim of CIT Small Business Lending Corporation | Impaired | The $303,245.78 secured portion of CIT's claim shall accrue interest at the annual rate of 5%, running from the Effective Date. The secured portion of this claim shall be reamortized over 20 years. The Debtor shall make monthly payments of $2,001.29, beginning on the Effective Date to CIT on account of the secured portion of its claim. The Debtor's final payment shall be on the twentieth anniversary of the Effective date, when the Debtor shall pay all then-outstanding principal and interest. In addition, the Debtor shall pay $27,612.89 on account of the $336,418.28 unsecured portion of the Class 3 claim. This unsecured Claim shall accrue interest at the rate of 5% running from the Effective Date, and shall |

|  |  |  |
|---|---|---|
|  |  | be paid in monthly payments in the amount of $182.23 beginning on the Effective Date to CIT on account of the unsecured portion of its claim. The Debtor's final payment shall be on the twentieth anniversary of the Effective date. |
| Class 4 – General Unsecured Creditors | Impaired | The Debtor shall make a pro rata distribution of $7,387.11 to the Class 4 Claims on the Effective Date |
| Class 5 – Briarcliff West Community Association | Impaired | Beginning on the Effective Date, the Debtor shall make monthly payments of at least $108.87, beginning on the Effective Date to the Class 5 Creditor |

**D.      Treatment of Unclassified Claims**

Certain types of claims are automatically entitled to specific treatment under the Code.  They are not considered impaired, and holders of such claims do not vote on the Plan.  They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code.  Accordingly, the Plan Proponent has not placed the following claims in any class:

1.      Administrative Expenses

Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under Code § 507(a)(2).  Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition.  The Code requires that each administrative expense claim be paid on the effective date of the Plan, unless the holder of the claim agrees to a different treatment.  As reflected below, each holder of an administrative expense claim allowed under Code § 503 will be paid in full on the effective date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

The following chart lists the Debtor's estimated administrative expenses and their treatment under this Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses Arising in the Ordinary Course of Business After the Petition Date | $0.00 | Paid in full on the effective date of the Plan, or according to terms of obligation if later |
| The Value of Goods Received in the Ordinary Course of Business Within 20 Days Before the Petition Date | $0.00 | Paid in full on the effective date of the Plan, or according to terms of obligation if later |
| Professional Fees, as approved by the Court | $25,000 | Paid according to separate written agreement, or |

| | | | according to court order if such fees have not been approved by the Court on the effective date of the Plan |
|---|---|---|---|
| Clerk's Office Fees | $0.00 | | Paid in full on the effective date of the Plan |
| Other administrative expenses | $0.00 | | Paid in full on the effective date of the Planor according to separate written agreement |
| Office of the U.S. Trustee Fees | $650 | | Paid in full on the effective date of the Plan |
| TOTAL | | | |

2.      Priority Tax Claims

Priority tax claims are unsecured income, employment, and other taxes described by Code § 507(a)(8).  Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

The following chart lists the Debtor's estimated § 507(a)(8) priority tax claims and their proposed treatment under the Plan:

| Description (name and type of tax) | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| Missouri Department of Revenue, withholding tax for December, 2009. | $1,118.53 | Unknown | Pmt interval   = not more than 4 years<br>Monthly payment  = $25.76<br>Begin date  = Effective Date<br>End date  = If this claim is not paid in full prior to the fourth anniversary of the Effective Date, the Debtor shall make a balloon payment of all then due principal and interest.<br>Interest Rate %  = 5.0%<br>Total Payout Amount =$1,236.43 |
| Missouri Department of Revenue, Smugglers Inn sales tax for December, 2003 and April, 2004. | $4,902.60 | Unknown | Pmt interval   = not more than 4 years<br>Monthly payment  = $112.90<br>Begin date  = Effective Date |

| | | | End date = If this claim is not paid in full prior to the fourth anniversary of the Effective Date, the Debtor shall make a balloon payment of all then due principal and interest. Interest Rate % = 5.0% Total Payout Amount =$5,419.36 |
|---|---|---|---|
| Missouri Department of Revenue, 2009 Income Tax | $2,949.41 | December, 2009 | Pmt interval = not more than 4 years Monthly payment = $67.92 Begin date = Effective Date End date = If this claim is not paid in full prior to the fourth anniversary of the Effective Date, the Debtor shall make a balloon payment of all then due principal and interest. Interest Rate % = 5.0% Total Payout Amount =$3,260.30 |
| Jackson County Collector, real estate taxes for Smugglers Inn for 2008 and 2009. This claim is secured by the Smugglers Inn real estate at 1650 Commercial in Kansas City, Missouri. The Jackson County Collector shall have a post-confirmation lien in the Debtor's Smuggler's Inn Property at 1650 Commercial in Kansas City, Missouri until its claim is paid in full in the manner set forth herein. | $56,754.22 | January 1, 2009 and January 1 2010 | Pmt interval = not more than 5 years Monthly payment = $1,071.02 Begin date = Effective Date End date = If this claim is not paid in full prior to the fifth anniversary of the Effective Date, the Debtor shall make a balloon payment of all then due principal and interest. Interest Rate % = 5.0% Total Payout Amount =$64,621.33 |
| Internal Revenue Service, 2009 income tax | $4,353.05 | October 18, 2010 | Pmt interval = 4 years Monthly payment = $100.25 Begin date = Effective Date End date = If this claim is |

| | | | not paid in full prior to the fourth anniversary of the Effective Date, the Debtor shall make a balloon payment of all then due principal and interest. Interest Rate % = 5.0% Total Payout Amount =$4,811.89 |
|---|---|---|---|

**E.      Treatment of Classified Claims and Interests.**

**1.      Treatment of Classified Claims and Interests Generally**

1.1      No Claim shall retain or receive a post-confirmation Lien or Security Interest in the property of the Estate unless such lien or security interest is granted in this Plan.

1.2      Except where otherwise provided, if the Debtor fails to make any payment or perform any term or condition of the Plan or security documents not modified by this Plan, then a Creditor or Interested Party, to whom such payment was to have been made, or for whose benefit the Debtor was to perform the violated term, may, after providing 30 days written notice to the Debtor and to the Debtor's counsel, if the Debtor has not cured, exercise all rights under this Plan and applicable law.

2.      Class 1: Priority Claims.
All allowed claims entitled to priority under Code § 507. The only priority claims of which the Debtor is aware are the tax claims listed above and the Debtor's bankruptcy attorney's fees.

3.      Class 2: Secured Claim of Residential Credit Solutions
The claim of Residential Credit Solutions is a claim secured by the Debtor's residence.  It will will be paid as follows;  On the Effective date of the Plan, the Debtor shall pay $70,000 towards the payment arrearages on this claim.  Beginning on the first day of the month following the month of the Effective Date, the Debtor shall commence making a monthly payment of $190.54 to Residential Credit Solutions on account of payment arrearages on its claim accrued through the Confirmation Date.  These payments shall be made on the first day of every month until the arrearages are paid in full.  The arrearages shall not accrue interest.  Additionally, the Debtor shall also make the contractually due monthly payment to the Class 2 Creditor, which consists of a payment for currently due principal, interest, and escrow of $3,171.79.

The Debtor's obligations under his promissory note and deed of trust to Residential Credit Solutions are not modified by this plan except insofar as this Plan structures payment of the Debtor's payment arrearages on this claim. The contractually due payment on this claim may change due to changes in escrow requirements or because of changes in the contractual interest rate. Notice of any change in this monthly payment shall be served on debtors' counsel at least 30 days prior to the payment change.   Residential Credit Solutions shall have a post-confirmation lien on the Debtor's residence at 1310 NW 47th Street in Kansas City, Missouri and shall retain its lien until its claim is paid in full in the manner set forth herein.

4.      Class 3: Claims of CIT Small Business Lending Corporation
The $303,245.78 secured portion of CIT's claim shall accrue interest at the annual rate of 5%, running from the Effective Date. The secured portion of this claim shall be amortized over 20 years. The Debtor shall make monthly payments of $2,001.29, beginning on the Effective Date to CIT on account of the secured portion of its claim. The Debtor's final payment shall be on the twentieth anniversary of the Effective date, when the Debtor shall pay all then-outstanding principal and interest. In addition, the Debtor shall pay $27,612.89 on account of the $336,418.28 unsecured portion of the Class 3 claim. This unsecured Claim shall accrue interest at the rate of 5% running from the Effective Date, and shall be paid in monthly payments in the amount of $182.23 beginning on the Effective Date to CIT on account of the unsecured portion of its claim. The Debtor's final payment shall be on the twentieth anniversary of the Effective date. Post-confirmation, the Debtor's obligation to pay $27,612.89 on account of CIT's unsecured claim shall be secured by CIT's deed of trust in the Debtor's Smuggler's Inn Property at 1650 N. Universal in Kansas City, Missouri.   CIT Small Business Lending Corporation shall have a post-confirmation lien in the Debtor's Smuggler's Inn Property at 1650 N. Universal in Kansas City, Missouri to secure the payment of its claims in the manner set forth herein.

5.      Class 4: All Unsecured Claims Allowed Under Code § 502.
Unsecured claims allowed under Code § 502 (other than Class 1 Priority Claims) will receive a *pro rata* distribution of $7,387.11 on the Effective Date.

6.      Class 5: Secured Claim of Briarcliff West Community Association
        Beginning on the Effective Date, the Debtor shall make monthly payments of at least to $108.87 the Class 5 Creditor. On the fourth anniversary of the Effective Date, the Debtor shall pay all then outstanding principal and interest. The Briarcliff West Community Association shall have a post-confirmation lien on the Debtor's residence at 1310 NW 47th Street in Kansas City, Missouri and shall retain its lien until its claim is paid in full in the manner set forth herein

F.      TREATMENT OF U.S. TRUSTEE FEES

All fees required to be paid by 28 U.S.C. § 1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the Effective date of this Plan will be paid on the Effective date.

IV.     ALLOWANCE AND DISALLOWANCE OF CLAIMS

**A.      Disputed Claims**

A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or liquidated.

No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

**B.      Settlement of Disputed Claims**

The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## V.      PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.      Assumed Executory Contracts and Unexpired Leases**

The Debtor will assume his only unexpired lease or executory contract, a $5,000 per month lease of the Smugglers Inn to Son & H, Inc. upon the date of the entry of the order confirming this Plan.  Assumption means that the Debtor has elected to continue to perform the obligations under such executory contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

**B.      Rejected Executory Contracts and Unexpired Leases**

The Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases that (a) are not expressly assumed under section V.A. of this Plan or (b) were not assumed under a separate motion before the effective date of this Plan.  A proof of a claim arising from the rejection of an executory contract or unexpired lease under section V.A. of this Plan must be filed no later than thirty days after the effective date of this Plan.  Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

All executory contracts and unexpired leases that are not listed as being assumed will be rejected under the Plan.  Consult your adviser or attorney for more specific information about particular contracts or leases.  If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

## VI.      GENERAL PROVISIONS

**A.      Definitions and Rules of Construction**

The definitions and rules of construction stated in Code §§ 101 and 102 apply when terms defined or construed in the Code are used in this Plan.

**B.      Effective Date of Plan**

The Effective Date of this Plan is the first day of the month following the month in which the court enters its order confirming this Plan.  But if a stay of the confirmation order is in effect on that date, the Effective Date will be the first day of the month immediately following the date on which no stay of the confirmation order is in effect, unless the confirmation order has been vacated.

## C.    Severability
If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

## D.    Binding Effect
The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

## E.    Captions
The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.


## VII.    MEANS OF IMPLEMENTING THE PLAN

## A.    Source of Payments
Payments and distributions under the Plan will be funded by the following:

a) The Debtor will receive $5,000 per month in wages and $5,000 per month in rent from Son & H, Inc. the corporation which he is the sole shareholder, which operates the Smugglers Inn.

b) The Debtor's wife, Nadya Al-Saoudi, has begun work at Moe's Car Sales, Inc., a car dealership owned by Mr. Al-Saoudi's brother, as a bookkeeper and salesperson.  She will be paid a salary of $3,000 per month for this position.

c) Samer Al-Saoudi, the debtor's brother, transferred a gift of $20,000 to the debtor on April 15, 2011.

d) The debtor sold his 2002 Mercedes to Moe's Car Sales, Inc. for $9,500 and his 1998 Chevrolet van to Moe's Car Sales, Inc. for $1,500.

e) The debtor has received a $4,641 refund on his 2010 federal tax return.


## B.    Risk Factors
The proposed Plan has the following risks:
The  projections of Income in this Plan are the Debtor's.  Any assumptions used in preparing the projections are subject to significant business, economic, and competitive uncertainties and contingencies, many of which are beyond the Debtor's control.  There generally will be a difference between projections of future performance and actual results because certain events

and circumstances may not occur as expected.  These differences could be material.  While the Debtor believes that the projections are conservative and reasonable, there can be no assurance that the projections will be realized.  Consequently, the projections should not be regarded as a representation by the Debtor.  In considering the projections, holders of Claims and Interests should be mindful of the inherent risk in developing projections for the future.

**D.     Tax Consequences of Plan**

Creditors and equity interest holders concerned with how the Plan may affect their tax liability should consult with their accountants, attorneys, or advisors.

**IX.     CONFIRMATION REQUIREMENTS AND PROCEDURES**

**A.     Overview of Requirements**

To be confirmable, the Plan must meet the requirements listed in Code §§ 1129(a) or (b). These include the requirements that: the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are not the only requirements listed in Code § 1129, and they are not the only requirements for confirmation.

**B.     Who May Vote or Object**

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan.  A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or al
lowed for voting purposes and (2) impaired.

**C.     What Is an Allowed Claim or an Allowed Equity Interest?**

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan.  Generally, a claim or equity interest is allowed if either (l) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest.  When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court overrules the objection or allows the claim or equity interest for voting purposes under Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

The deadline for filing a proof of claim in this case was November 26, 2010.

**D.     What Is an Impaired Claim or Impaired Equity Interest?**

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is impaired under the Plan.  As provided in Code § 1124, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

**E.     Who is Not Entitled to Vote**

The following types of creditors and equity interest holders are not entitled to vote:

1.  Holders of Claims and equity interests that have been disallowed by an order of the Court.
2.  Holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.
3.  Holders of claims or equity interests in unimpaired classes.
4.  Holders of claims entitled to priority pursuant to Code §§ 507(a)(2), (a)(3), and (a)(8).
5.  Holders of claims or equity interests in classes that do not receive or retain any value under the Plan.
6.  Holders of administrative expenses.
Even if you are not entitled to vote on the plan, you have a right to object to the confirmation of the plan.

## F.    Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

## G.    Votes Necessary to Confirm the Plan

If impaired classes exists, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed below in section G.2.

### 1.    Votes Necessary for a Class to Accept the Plan

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.
A class of equity interests accepts the Plan if the holders of at least two-thirds in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

### 2.    Treatment of Nonaccepting Classes

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by Code § 1129(b).  A Plan that binds nonaccepting classes is commonly referred to as a "cram down" plan.  The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of Code § 1129(a)(8), does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.
        You should consult your own attorney if a "cramdown" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.

## H.    Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to this Disclosure Statement as **Exhibit C**.

I.      **Feasibility**

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.   The Court has set the Confirmation hearing on the Plan for June 14, 2011, which will  Debtor anticipates that there will be a confirmation hearing on the Plan in the month of April and that the effective date of the Plan will be May 1, 2011.

J.      **Ability to Initially Fund Plan**

The Plan Proponent believes that the Debtor will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date.   Tables showing the amount of cash on hand on the effective date of the Plan, and the sources of that cash are attached to as **Exhibit D**.

K. **Ability to Make Future Plan Payments And Operate Without Further Reorganization**

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments.   The Plan Proponent has provided projected financial projections are set forth below;

| | |
|---|---|
| $120,000 | Annual wages and rent payments from Son & H, Inc. to Debtor |
| $36,000 | Debtor's wife's annual income |
| ($28,000) | State ($4,000), federal ($7,500), and local ($16,500) taxes |
| ($26,400) | Reasonably necessary expenses for health and welfare of the Debtor and his family. |
| $101,600 | Total annual net income available to pay creditors. |
| $82,204.08 | Sum of annual plan payments, years 1 - 4 |

The Plan Proponent's financial projections show that the Debtor will have an aggregate annual average cash flow, after paying operating expenses and post-confirmation taxes, of $101,600. The final Plan payment is expected to be paid on July 1, 2031.

You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.

X.      **EFFECT OF CONFIRMATION OF PLAN**

A.      **Discharge**

Confirmation of this Plan does not discharge any debt provided for in this Plan until the court

grants a discharge on completion of all payments under this Plan, or as otherwise provided in Code § 1141(d)(5). The Debtor will not be discharged from any debt excepted from discharge under Code § 523, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure. The Debtor anticipates applying for an order discharging his debts shortly after the fifth anniversary of the Effective Date.

## B.    Modification of Plan

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or revoting on the Plan. Upon request of the Debtor, the United States trustee, or the holder of an allowed unsecured claim, the Plan may be modified at any time after confirmation of the Plan but before the completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of the claim made other than under the Plan.

## C.    Final Decree

Once the Debtor has received his discharge, the Debtor will seek an order of the Court entering a final decree and closing the case..

**ZIAD AL-SAOUDI,** Debtor and Debtor-in-Possession

By:/s/ Ziad al Saoudi

-and-

**MERRICK, BAKER, AND STRAUSS**

/s/ Victor F Weber
Bruce E. Strauss   #26323
Victor F. Weber   #57361
MERRICK BAKER & STRAUSS, P.C.
400 Peck's Plaza
1044 Main Street
Kansas City, Missouri 64105
Telephone:    (816) 221-8855
Facsimile:    (816) 221-7886
ATTORNEYS FOR ZIAD AL-SAOUDI

EXHIBITS

Exhibit A – 2009, 2010, and Jan – April, 2011 Profit and Loss Statements of Son & H, Inc.

Exhibit B – Postpetition Operating Reports

**Exhibit C — Liquidation Analysis**

Plan Proponent's Estimated Liquidation Value of Assets

Assets

| | | |
|---|---|---|
| a. | Cash on hand | $56,947.29 |
| b. | Accounts receivable | $0.00 |
| c. | Inventory | $0.00 |
| d. | Furniture, clothing, books, and other household goods | $3,200 |
| e. | Machinery & equipment | $0.00 |
| f. | Automobiles | $11,300 |
| g. | Building & Land (FMV * 75%) | $626,250 |
| h. | Customer list | $0.00 |
| I | Investment property (such as stocks, bonds or other financial assets) | $0.00 |
| j. | Lawsuits or other claims against third-parties | $0.00 |
| k. | Other intangibles (such as avoiding powers actions) | $0.00 |

| | |
|---|---|
| Total Assets at Liquidation Value | $697,697.29 |

Less:
| | |
|---|---|
| Secured creditors' recoveries | $626,250 |

Less:
| | |
|---|---|
| Chapter 7 trustee fees and expenses | $ |

Less:
| | |
|---|---|
| Chapter 11 administrative expenses | $25,000 |

Less:
| | |
|---|---|
| Priority claims, excluding administrative expense claims | $13,323.59 |

Less:
| | |
|---|---|
| Debtor's claimed exemptions | $5,886.50 |

| | | |
|---|---|---|
| (1) | Balance for unsecured claims | $27,237.20 |
| (2) | Total dollar amount of unsecured claims | $933,936.56 |

| | |
|---|---|
| Percentage of Claims Which Unsecured Creditors Would Receive Or Retain in a Chapter 7 Liquidation: | 2.916% |
| Percentage of Claims Which Unsecured Creditors Will receive under the Plan: | 3.747%  ($35,000) |

**Exhibit D — Cash on hand on the effective date of the Plan**

Cash on hand on effective date of the Plan:      $89,505.50

Less -

    Amount of administrative expenses payable on    - $0.00
    Effective date of the Plan,

    Amount of statutory costs and charges    - $ 650
    *(United States Trustee's Fees)*

    Amount of cure payments for executory contracts    - N/A

    Other Plan Payments due on effective date of the    - $
    Plan

    $ 70,000 –residential mortgage arrearage,
    Residential Credit Solutions.
    $ 3,171.79 contractual mortgage payment
    Residential Credit Solutions.
    $ 2,183.52 payment towards claim of
    CIT Small Business Lending Corporation
    $ 25.76 – Missouri Department of Revenue
    12/09 withholding tax.
    $ 112.90 – Missouri Department of Revenue
    Smugglers Inn Sales Tax 12/03 and 4/04
    $ 1,071.02 – Jackson County Collector
    2008 and 2009 real estate tax, Smugglers Inn
    $ 100.25 – Federal Internal Revenue Service
    2009 Income tax
    $ 108.87 – Briarcliff Community Association dues.
    $7,387.11 – Distribution to unsecured creditors.

        Balance after paying these amounts ……… $ 3,520.78

The sources of the cash Debtor will have on hand by the effective date of the Plan are estimated as follows:

    $ 56,947.29        Cash in Debtor's bank account now

    + $19,630    Debtor's net income from rents and salary May 10 – June 31

    + $6,000    Debtor's wife's income from wages, May 10 – June 31

    + $9,500    Proceeds of sale of Debtor's Mercedes

    + $5,000    Distribution of Profits from Son & H, Inc. to Debtor

- $3,171.79     Adequate protection payment to Residential Credit Solutions June 1

- $4,400        Reasonably necessary expenses for food, clothing, etc. for Debtor and his family


$ 89,505.50    Total